COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOSE SANTOS ESCOBEDO, | § | No. 08-12-00296-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| V. | § | 78th District Court |
| | § | |
| | | of Wichita County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC# 52494-B) |
| | § | |
| Appellee. | § | |
| | § | |

## **O P I N I O N**

Jose Santos Escobedo appeals his conviction of possessing more than four ounces but less than five pounds of marihuana, a state jail felony. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.121(b)(3)(West 2010)(providing that possession of more than four ounces but less than five pounds of marihuana is a state jail felony). We affirm.

### **FACTUAL AND PROCEDURAL SUMMARY**

On August 21, 2012, Appellant waived his right to a jury trial and entered a plea of guilty to the charged offense pursuant to what the parties refer to as a "split" plea bargain. Under this multi-part plea agreement, Appellant agreed to plead guilty in exchange for the State's promise to file a motion for the trial court to impose punishment for a Class A misdemeanor pursuant to Section 12.44 of the Texas Penal Code and its agreement to recommend that Appellant be

sentenced to confinement for 50 days in the county jail.  *See* TEX.PENAL CODE ANN. § 12.44(a)(West 2011)(authorizing reduction of statement jail felony punishment to misdemeanor punishment, often referred to as a "12.44 reduction").  The State and Appellant agreed that sentencing would not occur until August 27, 2012.  The State's agreement to move for a Section 12.44 reduction and recommend a sentence of 50 days in the county jail was made in exchange for Appellant's promise to appear for the sentencing hearing on August 27, 2012 and to not "pick up or accrue any new criminal activity" before that date.  Appellant's trial counsel understood the second term to mean Appellant could not "commit any new offense" before the sentencing date.  The parties agreed that if Appellant committed a new offense, the State would withdraw its motion for a Section 12.44 reduction and would instead recommend that Appellant be sentenced to serve twelve months in the state jail.  The plea agreement also required the State to dismiss the possession of marihuana charge pending against Appellant's brother, Miguel Chacon.  The appellate record does not include a transcription of the guilty plea proceeding conducted on August 21, 2012, but the plea papers and transcription of the sentencing hearing reflect that the trial court accepted Appellant's guilty plea, agreed to follow the plea bargain, and found him guilty.[1]  At the sentencing hearing, the State introduced evidence that Appellant had been arrested for possession of less than two ounces of marihuana on August 22, 2012, less than twenty-four hours after he entered the guilty plea.  At approximately 4 a.m. that morning, Wichita County Deputy Sheriffs Patrick McFerrin and Tim Putney were

---

[1]  At the beginning of the sentencing hearing, the prosecutor recited the terms of the plea agreement and what had occurred at the guilty plea hearing.  Further, the plea papers reflect that the trial court accepted Appellant's guilty plea.  The trial court's approval of the plea agreement is also reflected by the court's signature on an order granting the State's Section 12.44 motion to impose the punishment for a Class A misdemeanor.

dispatched to check on the welfare of a woman who had called to report that her boyfriend had tried to put some kind of drug in her mouth. The dispatcher advised them that the call had been abruptly disconnected.

The deputy sheriffs arrived at the house but could not gain access because it was surrounded by a chain link fence and locked gate. McFerrin shined a light on the windows and saw Appellant walking around inside of the house. After a few minutes, Appellant came out of the house and spoke to them at the gate. Appellant was upset the deputies were there and he tried to explain that everything was okay, but the deputies told him they needed to check on the safety of the home's occupants. The deputies also saw a woman, later identified as Sophia Garcia, standing in the doorway and waving her arm indicating that she wanted them to come up to the door. Deputy Putney described her as being "in a panic."

Appellant unlocked the gate and Deputy McFerrin walked over to speak with Garcia who was sobbing and appeared to be in distress. They walked into the house and McFerrin asked Garcia why she was crying. Garcia responded that Appellant had tried to put drugs in her mouth and she did not do drugs. She did not know what type of drug it was or where he had put the drugs, but she told Deputy McFerrin that the incident had occurred in the living room. Deputy McFerrin walked into the living room with Garcia and saw a marihuana pipe on top of a toolbox which was located on the coffee table in the living room. McFerrin could see a green leafy substance inside of the pipe. McFerrin picked up the pipe and smelled the odor of burnt marihuana. After finding the marihuana pipe, McFerrin looked inside of the toolbox and found loose marihuana inside of it. Deputy Putney also found a baggie of marihuana hidden under one

of the couch cushions in the living room near the toolbox. Garcia told Deputy Putney that she and Appellant had been smoking marihuana that evening. She also told them that they needed to look inside a bedroom which Appellant did not allow her to enter. The deputies went inside of that bedroom and found apparatus used for growing marihuana, including grow lamps and fans. They also saw dried marihuana debris on the floor.

McFerrin arrested both Appellant and Garcia for possession of less than two ounces of marihuana despite Garcia's assertions that it was Appellant's marihuana. Appellant told the deputies he could not be arrested for possession because the marihuana was not on his person and he did not own the home, but he admitted he had been renting it for approximately six months.

Appellant testified at sentencing that the house belonged to Garcia and he lived with his parents. He denied knowing anything about the toolbox or that there was any marihuana in the house. Garcia testified that she had just started living at the house in May or June of 2012 and Appellant spent the night with her only once or twice a week. Garcia denied inviting the deputies inside of the house and asserted that the marihuana pipe, toolbox, and marihuana belonged to her. She testified on cross-examination that Appellant had installed the grow lamps in the bedroom.

At the conclusion of the hearing, the trial judge stated that when he considered the totality of the circumstances, which included marihuana found on top of the coffee table, and Garcia's statement that both of them had smoked marihuana that evening, he concluded that Appellant had failed to comply with the requirements of the plea agreement which would have resulted in a

- 4 -

reduction of the sentence. Accordingly, the court rescinded its order granting the State's Section 12.44 reduction motion and assessed Appellant's punishment at twelve months in the state jail in accordance with the plea agreement. The trial court certified that this is a plea-bargain case and Appellant had permission to appeal issues relating to sentencing.

## VAGUENESS OF PLEA BARGAIN TERM

In Issue One, Appellant argues that the term of the plea agreement requiring him to not "pick up or accrue any new criminal activity" prior to the sentencing hearing is so vague and overbroad that the trial court's finding he had violated this term resulted in a denial of his right to due process. The appellate record does not reflect Appellant ever objected in the trial court to the plea agreement on this ground. In order to preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court and obtain a ruling. TEX.R.APP.P. 33.1(a). Even constitutional errors may be waived by failure to object to them at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990). This includes errors based on the constitutional right to due process. *Id.*; *see West v. State*, 121 S.W.3d 95, 114 (Tex.App.--Fort Worth 2003, pet. ref'd)(failure to object on ground of violation of constitutional right to due process waives that ground); *Alexander v. State*, 137 S.W.3d 127, 130-31 (Tex.App.--Houston [1st Dist.] 2004, pet. ref'd)(failure to object to trial court's violations of federal and state due process rights waives appellate review of those claims). We find that Appellant waived this complaint by failing to raise it in the trial court. Issue One is overruled.

## BREACH OF THE PLEA AGREEMENT

In Issue Two, Appellant challenges the legal sufficiency of the evidence supporting the

trial court's finding that he breached the plea agreement by possessing less than two ounces of marihuana. Appellant does not ask that he be allowed to withdraw his plea of guilty or that the trial court be ordered to enforce the provision in the plea agreement which would result in Appellant being sentenced to serve 50 days in the county jail. He instead requests that we reverse the trial court's judgment and direct the trial court to delay sentencing until after the new possession of marihuana offense has been fully adjudicated.

*Standard of Review*

Appellant takes the position that the trial court's decision should be measured by the *Jackson v. Virginia*[2] legal sufficiency standard, but he does not cite any cases holding that this is the appropriate standard of review when a defendant challenges the trial court's finding that he breached a term of the plea agreement. In order to determine the appropriate standard of review, we must review the law applicable to plea agreements and the remedies available to the parties for breach of the agreement.

Plea agreements are a vital part of the criminal justice system. *State v. Moore*, 240 S.W.3d 248, 250 (Tex.Crim.App. 2007). Plea bargaining flows from the mutuality of advantage to defendants and prosecutors, each with his own reasons for wanting to avoid trial. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). A plea agreement may simply involve the defendant pleading guilty in exchange for a lesser sentence, but charge reductions, and dismissal of other charges are also commonplace. *State v. Moore*, 240 S.W.3d at 250. Plea agreements are considered to be a contractual arrangement between the State and the defendant. *Id.* at 251; *State v. Wilson*, 324 S.W.3d 595, 599 (Tex.Crim.App. 2010).

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

As such, they may contain a variety of other stipulations and the terms of the plea agreement are left solely to the discretion of the parties who are dealing at arm's length. *State v. Moore*, 240 S.W.3d at 251. Consequently, "[w]hen a defendant agrees to the terms of a plea bargain agreement he is deemed to have entered into the agreement knowingly and voluntarily unless he shows otherwise." *Id.*, *quoting Ex parte Williams*, 637 S.W.2d 943, 947 (Tex.Crim.App. 1982); *State v. Wilson*, 324 S.W.3d at 599. An appellate court will not interfere with the terms of the plea agreement unless they appear to be manifestly unjust. *State v. Moore*, 240 S.W.3d at 251; *Ex parte Williams*, 637 S.W.2d at 948.

Once a plea agreement is finalized by the parties and approved by the trial court, it becomes binding on both the State and the defendant. *See State v. Moore*, 240 S.W.3d at 251; *Bitterman v. State*, 180 S.W.3d 139, 142 (Tex.Crim.App. 2005); *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex.Crim.App. 1996). The State and the defendant are not only entitled to the benefit of the agreement but are required to uphold their ends of the agreement. *State v. Moore*, 240 S.W.3d at 251. Further, the trial court has a "ministerial, mandatory, and non-discretionary duty" to enforce the plea bargain it has approved. *Perkins v. Court of Appeals for the Third Supreme Judicial District of Texas, at Austin*, 738 S.W.2d 276, 284-85 (Tex.Crim.App. 1987). When the defendant fails to perform his part of the agreement, as alleged in this case, the State may demand specific performance. *State v. Moore*, 240 S.W.3d at 251-52, *citing Perkins*, 738 S.W.2d at 283.

The plea agreement in the instant case, like the agreement in *State v. Moore*, included an express agreement with respect to the remedy in the event of a partial breach. *See State v.*

*Moore*, 240 S.W.3d at 253.[3]  The trial court found that Appellant had breached the plea agreement by committing a new offense, possession of less than two ounces of marihuana.  In accordance with the terms of the plea agreement, the court rescinded its order granting the State's motion made pursuant to Section 12.44 and assessed Appellant's punishment at confinement in the state jail for twelve months.

The issue we must decide is by what standard does an appellate court review the trial court's determination that the defendant breached one of the plea agreement's terms such that the State was entitled to specific performance of the agreed remedy for a partial breach.  We understand Appellant to assert that the court's finding that he possessed marihuana should be reviewed under the *Jackson v. Virginia* legal sufficiency standard.  The Fourteenth Amendment's guarantee of due process prohibits a criminal defendant from being convicted of an offense and denied his liberty except upon proof sufficient to persuade a rational fact finder of guilt beyond a reasonable doubt.  *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003).  *Jackson v. Virginia* states the federal constitutional due process standard by which we measure the legal sufficiency of evidence in cases where the federal constitution places the burden on the prosecution to establish guilt beyond a reasonable doubt.  *See Fuller v. State*, 73 S.W.3d 250, 252 (Tex.Crim.App. 2002).  *Jackson* is applicable only where the burden is on the prosecution to establish guilt beyond a reasonable doubt.  *Ex parte Williams*, 703 S.W.2d 674, 682

---

[3] In *State v. Moore*, the plea agreement required the defendant to plead guilty to the charged offense, manufacturing more than four grams but less than 200 grams of methamphetamine, and the State agreed to a six-week postponement of the sentencing so the defendant could prepare for his term of incarceration. *State v. Moore*, 240 S.W.3d at 249.  The defendant promised to appear for his sentencing and to refrain from committing any criminal offense during this six-week period. *Id.*  If Appellant met these terms, the State promised to recommend a sentence of twenty-five years, but if Appellant failed to satisfy these terms, the State would not recommend a punishment and it would become an open plea for the trial court to determine the sentence on the full punishment range for a first degree felony. *Id.*

(Tex.Crim.App. 1986). It is well established that *Jackson's* legal sufficiency standard is inapplicable when the defendant knowingly, intelligently, and voluntarily enters a plea of guilty or *nolo contendere*. *See Ex parte Williams*, 703 S.W.2d at 682. We have found no authority to support a conclusion that the State is required to prove beyond a reasonable doubt that the defendant breached a term of the plea agreement. Consequently, we find that *Jackson's* legal sufficiency standard is inapplicable to our review of the trial court's finding. We conclude that the trial court's determination that Appellant violated a term of the plea agreement should instead be reviewed for an abuse of discretion. *See Bitterman*, 180 S.W.3d at 143-44; *Bass v. State*, 576 S.W.2d 400, 401-02 (Tex.Crim.App. 1979).

### *Possession of Marihuana*

A person commits an offense if he intentionally or knowingly possesses more than four ounces but less than five pounds of marihuana. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.121(b)(3)(West 2010). Possession is defined as "actual care, custody, control, or management." TEX.HEALTH & SAFETY CODE ANN. § 481.002(38)(West Supp. 2014). To support a conviction for unlawful possession of a controlled substance, the State must prove: (1) that the defendant exercised care, custody, control, or management over the substance; and (2) that he knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005).

Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that

the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether he was under the influence of a controlled substance or narcotic when arrested; (5) whether he possessed other contraband when arrested; (6) whether he made incriminating statements when arrested; (7) whether he attempted to flee, (8) whether he made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether he owned or had the right to possess the place where the contraband was found; (12) whether the contraband was found in an enclosed place; (13) whether he was found with a large amount of cash; (14) whether his conduct indicated a consciousness of guilt; (15) whether he made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) whether he was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Corpus v. State*, 30 S.W.3d 35, 38 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.--Austin 1991, pet. ref'd).

*Analysis*

- 10 -

The State asserted at the sentencing that Appellant violated the plea agreement by possessing less than two ounces of marihuana on August 22, 2012. It was the trial court's responsibility to resolve the conflicts in the evidence and determine the credibility of the witnesses. The trial court could have believed the testimony that Garcia told one of the deputies that she and Appellant had been smoking marihuana that evening. Further, the trial court could have found the existence of several factors establishing an affirmative link between Appellant and the marihuana, including that: he was present when the marihuana was found; the marihuana pipe containing marihuana was in plain view on the coffee table; Appellant had been in close proximity to the marihuana before he went outside to see what the deputies wanted; Garcia directed the deputies to a bedroom which contained equipment used to grow marihuana; Appellant had instructed her to stay out of the bedroom with the equipment; Appellant had installed the grow lamps before she moved into the house; and Appellant told the deputies that he had been renting the house for six months. The evidence admitted at the hearing supports the trial court's conclusion that Appellant had violated the plea agreement by possessing less than two ounces of marihuana. In light of this finding, the trial court had a duty to enforce the plea agreement. Consequently, the trial court did not abuse its discretion by rescinding its order which granted the State's motion to impose punishment for a Class A misdemeanor and assessing Appellant's punishment at confinement in the state jail for twelve months. Issue Two is overruled. Having overruled both issues, we affirm the judgment of the trial court.

October 17, 2014

ANN CRAWFORD McCLURE, Chief Justice

- 11 -

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)